IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| South River Watershed Alliance, Inc., and Jacqueline Echols, | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| DeKalb County, Georgia, | * |
| | * |
| Defendant. | * |
| _____ | * |

## COMPLAINT

## Nature of Action

### 1.

This suit seeks to remedy DeKalb County, Georgia's violations of the Clean Water Act ("CWA"). DeKalb County has repeatedly spilled wastewater, including untreated sewage, into streams and rivers from a Wastewater Collection and Transmission System.

## Jurisdiction

### 2.

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).

3.

Plaintiffs have complied with the pre-suit notice provisions of the CWA.

4.

Pursuant to Section 505(b)(1)(A) of the CWA, (33 U.S.C. § 1365(b)(1)(A)), on July 15, 2019, Plaintiffs mailed a Notice Letter setting forth notice of intent to file suit under the CWA to address the violations set forth in this Complaint.

5.

Plaintiffs sent the Notice Letter by U.S.P.S. certified mail to Michael L. Thurmond Chief Executive Officer, DeKalb County, Georgia; Reginald Wells, Director, DeKalb County Department of Watershed Management; Commissioner Jeff Rader, Presiding Officer, DeKalb County Board of Commissioners; William P. Barr, U.S. Attorney General; Richard E. Dunn, Director, Georgia Environmental Protection Division ("EPD"); Viviane H. Ernstes, DeKalb County Attorney; Mary S. Walker, Regional Administrator, EPA Region 4; and Andrew R. Wheeler, Administrator, U.S. Environmental Protection Agency ("EPA") ("Notice Letter" attached hereto at Doc. No. 1-1, with Notice Letter Exhibits at Doc. No. 1-2 through 1-6 and Proof of Service at Doc. No. 1-7).

6.

The Notice Letter complied with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. Part 135, Subpart A.

7.

More than 60 days have passed since Plaintiffs gave notice of the alleged CWA violations to DeKalb County, EPA, EPD and the Attorney General.

**Venue**

8.

Venue is appropriate in the Northern District of Georgia pursuant to 28 U.S.C. §1391(b) and 33 U.S.C. § 1365(c)(1) because the alleged CWA violations occurred within this judicial district.

**Parties**

9.

Plaintiff South River Watershed Alliance, Inc. is a non-profit membership organization whose mission is to protect and restore the water quality and biodiversity of the South River watershed and Chattahoochee River watershed to the beneficial use of people and wildlife.

10.

The members of South River Watershed Alliance, Inc. use and enjoy the

South River watershed and Chattahoochee River watershed for aesthetic,

recreational, ecological, and biological values. The sewage spills have

lessened the aesthetic, recreational, ecological, and biological values of these

watersheds for South River Watershed Alliance, Inc.'s members. The sewage

spills from DeKalb County's Wastewater Collection and Transmission System

adversely impacts the use and enjoyment of these values by the members of

South River Watershed Alliance, Inc.

11.

The members of South River Watershed Alliance, Inc. have been and will be

injured as a result of DeKalb County's CWA violations. These violations

harm the environment. South River Watershed Alliance, Inc.'s injuries would

be redressed by the relief sought. South River Watershed Alliance, Inc.'s

interests in this action fall within the zone of interests protected by the CWA.

12.

Plaintiff Jacqueline Echols is a member of South River Watershed Alliance,

Inc. who uses and enjoys the South River watershed and Chattahoochee

River watershed for aesthetic, recreational, ecological, and biological values.

The sewage spills have lessened the aesthetic, recreational, ecological, and

biological values of these watersheds for Dr. Echols. The sewage spills from

DeKalb County's Wastewater Collection and Transmission System adversely

impacts Dr. Echols' use and enjoyment of these values. Dr. Echols has been

and will be injured as a result of DeKalb County's CWA violations. These

violations harm the environment. These injuries would be redressed by the

relief sought.

13.

Defendant DeKalb County is a political subdivision of the State of Georgia

charged with operation of the County's Wastewater Collection and

Transmission System and implementation of a program to manage the

County's Municipal Separate Storm Sewer System. DeKalb County, Georgia

is subject to suit under the Clean Water Act. 33 U.S.C. § 1365(a).

**Statement of Facts**

14.

DeKalb County owns and operates a Wastewater Collection and

Transmission System designed to collect and transmit wastewater to DeKalb

County's Snapfinger Creek and Pole Bridge Creek Wastewater Treatment

Facilities and to the City of Atlanta's R.M. Clayton Water Reclamation

Center.

15.

Wastewater is supposed to be collected, transmitted to these Wastewater Treatment Facilities and Reclamation Center, treated, and discharged into surface waters in accordance with specific effluent limitations set forth in National Pollutant Discharge Elimination System ("NPDES") Permits issued by EPD (NPDES Permit No. GA0024147 (Snapfinger Creek); NPDES Permit No. GA0026816 (Pole Bridge Creek); and NPDES Permit No. GA0039012 (R.M. Clayton)).

16.

DeKalb County has repeatedly spilled wastewater, including untreated sewage, from the Wastewater Collection and Transmission System into waters of the United States and waters of the State before the wastewater reached Snapfinger Creek WWTF, Pole Bridge Creek WWTF, and R.M. Clayton Water Reclamation Center.

17.

Neither EPA nor EPD is diligently prosecuting a civil or criminal action in a court of the United States or State of Georgia to redress Defendant DeKalb County's CWA violations.

18.

Neither EPA nor EPD is diligently prosecuting an administrative civil penalty action under Section 309(g)(6) of the CWA, (33 U.S.C. § 1319(g)(6)), or under a comparable Georgia law, to redress Defendant DeKalb County's CWA violations.

19.

In December 2011, DeKalb County entered into a Consent Decree with EPA and EPD (N.D. Georgia, Case No. 1:10-cv-4039). The objectives of the Consent Decree are full compliance with the CWA and elimination of all spills. But the Consent Decree doesn't state that spills must be stopped by any specific date or that there need to be any measurable decrease in the number of spills (i.e., reducing spills by a certain percentage each year).

20.

Spills occurring after entry of the Consent Decree are subject to stipulated penalties ranging from $500 to $2,000 per spill but EPA and EPD have discretion on whether to demand such stipulated penalties.

21.

EPA and EPD are not diligently prosecuting DeKalb County for the ongoing sewage spills, either through the December 2011 Consent Decree or through any other enforcement action.

22.

Since July 25, 2014, there have been over 800 reported spills of untreated sewage from DeKalb County's Wastewater Collection and Transmission System into waters of the United States and waters of the State.

23.

A list of unauthorized spills from the County's Wastewater Collection and Transmission System into waters of the United States and waters of the State was attached to the Notice Letter at Exhibit A and is attached to this Complaint at Doc. No. 1-2.

24.

These spills are identified by date, time, location, estimated gallons spilled, cause, source, and name of receiving stream.

25.

A list identifying locations of repeated spills was attached to the Notice Letter at Exhibit B and is attached to this Complaint at Doc. No. 1-3.

26.

Wastewater with untreated sewage contains bacteria, viruses, and other pathogens that contaminate waterbodies and affect public health.

27.

DeKalb County's spills of untreated sewage have caused and continue to

cause violations of Georgia's water quality standards.

28.

The spills identified in Doc. No. 1-2 and Doc. No. 1-3 caused violations of the

following water quality standards:

> "All waters shall be free from materials associated with
> municipal or domestic sewage, industrial waste or any other
> waste which will settle to form sludge deposits that become
> putrescent, unsightly or otherwise objectionable." Ga. Comp. R. &
> Regs. 391-3-6-.03(5)(a);

> "All waters shall be free from oil, scum and floating debris
> associated with municipal or domestic sewage, industrial waste
> or other discharges in amounts sufficient to be unsightly or to
> unreasonably interfere with the designated use of the water
> body." Ga. Comp. R. & Regs. 391-3-6-.03(5)(b);

> "All waters shall be free from material related to municipal,
> industrial or other discharges which produce turbidity, color, odor
> or other objectionable conditions which unreasonably interfere
> with the designated use of the water body." Ga. Comp. R. & Regs.
> 391-3-6-.03(5)(c); and

> "All waters shall be free from turbidity which results in a
> substantial visual contrast in a water body due to a man-made
> activity." Ga. Comp. R. & Regs. 391-3-6-.03(5)(d).

29.

The NPDES permits issued to DeKalb County for Snapfinger Creek WWTF and Pole Bridge Creek WWTF state in part, "The permittee shall maintain and operate efficiently all treatment or control facilities and related equipment installed or used by the permittee to achieve compliance with this permit." (NPDES Permit No. GA0024147, Part II (A)(1) p. 16; NPDES Permit No. GA0026816, Part II (A)(1) p. 16).

30.

Sanitary sewer systems that are efficiently maintained and operated do not cause ongoing and repeated spills of untreated sewage.

31.

The spills identified in Notice Letter Exhibit A (Doc. No. 1-2) and Notice Letter Exhibit B (Doc. No. 1-3) occurred because DeKalb County failed to efficiently maintain and operate the Wastewater Collection and Transmission System of its treatment works in violation of the maintenance and operation provisions of its NPDES permits. (NPDES Permit No. GA0024147, Part II (A)(1) p. 16; NPDES Permit No. GA0026816, Part II (A)(1) p. 16).

32.

Spills from DeKalb County's Wastewater Collection and Transmission System, as identified in Notice Letter Exhibit A (Doc. No. 1-2) and Notice

Letter Exhibit B (Doc. No. 1-3), have resulted in discharges of untreated sewage into Snapfinger Creek, the South River, and several other water bodies that flow into the Upper Ocmulgee Watershed (Hydrologic Unit 03070103) and the Upper Chattahoochee Watershed (Hydrologic Unit Code 03130001), which are waters of the United States.

33.

As set forth in the Notice Letter Exhibit C, (Doc. No. 1-4), the following water bodies within the Upper Ocmulgee Watershed and the Upper Chattahoochee Watershed are on the State of Georgia's CWA Section 303(d) list of impaired water bodies because they do not meet fecal coliform bacteria and other water quality standards, thereby impairing the water bodies' designated use of Fishing: Shoal Creek (Headwaters to South River), Snapfinger Creek (Headwaters to South River), Doolittle Creek (Headwaters to South River), Cobbs Creek (Headwaters to Shoal Creek), Burnt Fork Creek (Headwaters to South Peachtree Creek), Sugar Creek (Upstream of Memorial Drive to South River), South Fork Peachtree Creek (Headwaters to Peachtree Creek, Atlanta), and the South River (Atlanta to Flakes Mill Road; Flakes Mill Road to Pole Bridge Creek; Pole Bridge Creek to Hwy 20; Hwy 20 to Snapping Shoals Creek; and Snapping Shoals to Jackson Lake). 33. U.S.C. § 1313(d).

34.

Spills from DeKalb County's Wastewater Collection and Transmission System, as identified in Notice Letter Exhibit A (Doc. No. 1-2) and Notice Letter Exhibit B (Doc. No. 1-3), have caused and/or contributed to the failure of these water bodies to meet fecal coliform bacteria and other water quality standards, and have caused and/or contributed to the impairment of these water bodies' designated use of Fishing.

35.

DeKalb County missed a December 20, 2017 deadline set forth in the December 2011 Consent Decree to integrate computer-based dynamic hydraulic models for all sewer sheds into one hydraulic model for the entire Wastewater Collection and Transmission System.

36.

DeKalb County has not yet integrated a computer-based dynamic hydraulic models for all sewer sheds into one hydraulic model for the entire Wastewater Collection and Transmission System.

37.

DeKalb County has acknowledged it will miss a June 20, 2020 deadline set forth in the December 2011 Consent Decree to complete an assessment and

rehabilitation under the Priority Areas Sewer Assessment and Rehabilitation Program.

38.

Within seven days of any major spill from the Wastewater Collection and Transmission System, DeKalb County is required to publish notice of the spill in the largest legal organ of the County where the spill occurred. (NPDES Permit No. GA0024147, Part II (A)(11)(f) p. 19; NPDES Permit No. GA0026816, Part II (A)(11)(f) p. 19).

39.

The Notice Letter Exhibit D, (Doc. No. 1-5), identifies major spills for which notice was not published in the largest legal organ of the County within seven days of the spill.

40.

EPD issued DeKalb County an NPDES Permit for Discharges from the DeKalb County Municipal Separate Storm Sewer System (MS4 Permit No. GAS000111, June 11, 2014 – June 10, 2019; MS4 Permit No. GAS000111, effective June 11, 2019).

41.

The MS4 permit defines Illicit Discharge as "any direct or indirect non-stormwater discharge to the separate storm sewer system, including but not

limited to, sewage." (MS4 Permit, Appendix A, p. 30 (prior permit); Appendix A, p. 33 (current permit)).

42.

The sewage spills from DeKalb County's Wastewater Collection and Transmission System identified in the Notice Letter at Exhibit E, (Doc. No. 1-6), discharged into the County's Municipal Separate Storm Sewer System and constitute illicit discharges.

43.

The MS4 Permit states DeKalb County must implement and enforce a Storm Water Management Program to detect and eliminate illicit discharges into the Municipal Separate Storm Sewer System.

44.

At a minimum, the Storm Water Management Program must "[e]nsure any identified illicit discharges are eliminated." (MS4 Permit, Table 3.3.2 (3.c.). p. 10 (prior permit and current permit)).

45.

The Storm Water Management Program is a part of the MS4 Permit. (MS4 Permit, Part III, p. 5 (prior permit and current permit)).

46.

DeKalb County has not ensured that illicit discharges are eliminated, as set forth in the Notice Letter Exhibit E (Doc. No. 1-6).

47.

DeKalb County must also implement activities described in the Storm Water Management Program to eliminate spillage from the County's Wastewater Collection and Transmission System to the Separate Storm Sewer System. (MS4 Permit, Table 3.3.2 (7.a.). p. 10 (current permit); Table 3.3.2 (7.a.). p. 11 (current permit)).

48.

DeKalb County has not implemented activities to eliminate sewage spills to the Separate Storm Sewer System.

## Count 1 – Violations of the Clean Water Act

49.

Section 505 of the Clean Water Act authorizes any citizen to commence a civil action against any person or governmental entity who is alleged to be in violation of a Clean Water Act effluent standard or limitation.  33 U.S.C. § 1365(a)(1).

50.

Section 505(f) of the CWA defines effluent standard or limitation as
including: an unlawful act under Section 301(a) of the CWA; a limitation
under Section 301 of the CWA; and a permit or condition of a permit issued
under Section 402 of the CWA. 33 U.S.C. § 1365(f)(1),(2)&(7).

51.

Section 301(a) of the Clean Water Act prohibits the discharge of pollutants
into waters of the United States except as authorized by and in compliance
with Section 402, which governs the issuance of NPDES permits. 33 U.S.C. §§
1311(a), 1342.

52.

An NPDES permit may be issued to allow the owner or operator of a facility
to discharge pollutants subject to certain limitations, such as effluent
standards, monitoring, reporting, and other terms. 33 U.S.C. § 1342; 40
C.F.R. Part 122.

53.

A discharge of any pollutants from a point source into waters of the United
States that is not expressly authorized by an NPDES permit violates effluent
standards and limitations under the Clean Water Act. 33 U.S.C. §§ 1311(a).

54.

The Clean Water Act's definition of "pollutant" in Section 502(6) of the Act identifies "sewage" as a pollutant. 33 U.S.C. § 1362(6).

55.

DeKalb County's NPDES Permits were issued under Section 402 of the CWA.

56.

NPDES Permits GA0024147, GA0026816 and GA0039012 do not authorize DeKalb County to spill untreated sewage from the Wastewater Collection and Transmission System into waters of the United States and waters of the State.

57.

The NPDES Permits define "spill" as "any discharge of raw sewage by a Publicly Owned Treatment Works (POTW) to the waters of the State." (NPDES Permit No. GA0024147, Part II (A)(11) p. 18; NPDES Permit No. GA0026816, Part II (A)(11) p. 18; and NPDES Permit No. GA0039012, Part II (A)(11) p. 26).

58.

"'Treatment works" means "any devices and systems used in the storage, treatment, recycling, and reclamation of municipal sewage or industrial wastes of a liquid nature … including intercepting sewers, outfall sewers,

sewage collection systems, pumping, power, and other equipment …" 33
U.S.C. § 1292(2)(A).

59.

DeKalb County's Wastewater Collection and Transmission System is a
Publicly Owned Treatment Works. 33 U.S.C. § 1292(2); 33 U.S.C. § 1362(26).

60.

The spills from DeKalb County's Wastewater Collection and Transmission
System, in Notice Letter Exhibit A (Doc. No. 1-2) and Exhibit B (Doc. No. 1-
3), are point source discharges of pollutants into waters of the United States
and waters of the State in violation of NPDES Permit Nos. GA0024147,
GA0026816 and GA0039012.

61.

The spills identified in Notice Letter Exhibit A (Doc. No. 1-2) and Notice
Letter Exhibit B (Doc. No. 1-3) are from point sources within DeKalb
County's Wastewater Collection and Transmission System which were not
identified in an NPDES permit as authorized outfalls.

62.

None of the discharges identified in Notice Letter Exhibit A (Doc. No. 1-2)
and Notice Letter Exhibit B (Doc. No. 1-3) were permitted or otherwise
authorized by the Clean Water Act.

63.

DeKalb County continues to violate the Clean Water Act by discharging

wastewater containing pollutants, including untreated sewage, from point

sources within its Wastewater Collection and Transmission System that are

not identified in its NPDES permit as authorized outfalls.

64.

DeKalb County's failure to publish notice of major spills from the Wastewater

Collection and Transmission System within seven days of the spill is in

violation of its NPDES permits.

65.

DeKalb County's MS4 Permits were issued under Section 402 of the CWA.

66.

DeKalb County's illicit discharges into the County's Municipal Separate

Storm Sewer System, the County's failure to ensure that illicit discharges are

eliminated, and the County's failure to implement activities to eliminate

sewage spills to the Separate Storm Sewer System are in violation of effluent

standards and limitations under the Clean Water Act, as set forth in the

County's MS4 Permits. 33 U.S.C. §§ 1311(a), 1342(p).

67.

DeKalb County's failure to efficiently maintain and operate the Wastewater

Collection and Transmission System of its treatment works is in violation of

the maintenance and operation provisions of its NPDES permits.

## Requested Relief

Plaintiffs respectfully request that this Court grant the following relief:

a.    Enter a judgment finding that DeKalb County, Georgia has violated

       and is in violation of the CWA;

b.    Issue an injunction requiring DeKalb County, Georgia to

       take all actions necessary to cease the discharge of wastewater into

       waters of the United States from the County's Wastewater Collection

       and Transmission System except in compliance with NPDES Permits;

c.    Issue an injunction requiring DeKalb County, Georgia to

       take all actions necessary to cease the illicit discharge of sewage spills

       from DeKalb County's Wastewater Collection and Transmission

       System into the County's Municipal Separate Storm Sewer System;

d.    Issue an injunction requiring DeKalb County, Georgia to comply with

       all terms and conditions of coverage under its NPDES Permits;

e.    Order DeKalb County, Georgia to pay civil penalties for violations of

       the CWA;

f.      Award Plaintiffs the costs of litigation, including reasonable attorney

and expert witness fees pursuant to Section 505(d) of the CWA (33

U.S.C. § 1365(d)); and

g.      Grant such other relief as the Court deems just and appropriate.

Respectfully submitted September 24, 2019.

/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs*

Jon L. Schwartz, Attorney at Law, P.C.
1170 Peachtree St., N.E., Suite 1200
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net